Good morning. I don't want to stand here this morning in front of this panel and dispute that Herrod understood the right to represent himself. Clearly he did. He cited the Sixth Amendment. He cited Johnson v. Zerst and Feretta. But I do want to say that understanding the same as understanding the risks of self-representation. And that, in this case, is where the problem lies. As the Court itself has indicated, the magistrate judge took basically no steps except in the most general terms to ensure that he was aware of those risks. And so I think we turn really to what, under the totality of circumstances, he could reasonably expect to know and whether he could have been reasonably expected to understand the dangers and disadvantages that he was placing upon himself. Now I'm not going to regurgitate what I've got in my brief. I think I've covered the general points pretty well. But I do want to talk about some of the things that the government talked about in their brief. The government talks about the fact that Herrod could read and write English and that somehow this by doesn't mean you understand what you're reading. If you want to recall way back in the day when we all took that lovely law school admissions test, there was a section on it called a reading comprehension. If reading just means you understand, that would have been utterly unnecessary. But if would-be law school students who've already graduated from college require a reading comprehension test to ascertain if they might be fit to represent clients, how much can we reasonably expect from someone who dropped out of high school and never had any formal education after that? Moreover, if being over 40 and being able to read and write English is sufficient, then there's basically no need for a Ferretti hearing at all. It's only necessary to ask the defendant how old you are and can he read and write English. Well, this guy did get a GED. He did get a GED, Your Honor. But he also- I knew that. It was in the PSR. That's true. It was in his PSR. And it's also in his PSR that he registered for a semester of college. But clearly he wasn't able to do that. He was unable to finish. He never got any credit for it. We don't know whether he just missed all of it or whether he was just so unable to understand what was required of him that he could proceed. But in any event- Mr. Booker, this guy was not totally unfamiliar with the justice system. I mean, you look at his rap sheet and he had like 45 offenses. Oh, my. Some of them were, you know, driving offenses, but some of them were assault. And so, I mean, this was not his first rodeo. No, it wasn't his first rodeo, and I'm not going to argue that it was. And I think in my brief I talked about the fact that those offenses were state offenses, which were pretty minor, and basically he pled out to them with advice of counsel and got, you know, fines, maybe some minimal time. But this was the first time he'd really been dealing with the federal court system on a fairly major felony charge and would be looking at dealing with And so I think it's different. I mean, he doesn't say to you, and he didn't at the time, that I don't understand the court system in the states, but he does say, I didn't understand what I was getting into in the federal courts. I expected kind of what I was getting in the state courts, and he didn't get that. He didn't listen to the judge when he pled, though. Obviously, he was told the potential sentence. Yeah, he was told the potential sentence, for sure. And he had gotten the PSR. I mean, that was what sent him into a state, wasn't it? It is what sent him into a state, because it was significantly higher than I think his counsel had told him that it might be. And so he was upset that his counsel hadn't done a better job of calculating and that if he'd known it was going to be that high, I think he indicated that he would not have pled guilty in the first place. He would have gone to trial. And so I think all those things, again, are covered in the brief. I'm not, I don't want to try to pull the wool over anybody's eyes here. I'm trying to be very clear, I think in the brief, I was... Was he indigent at the time of this hearing? At the time of this hearing, I believe he had retained counsel, because there is a line in the hearing where the judge says, well, you had your own choice of counsel during the plea hearing. And obviously, if he was CJA at that time, he would have had court appointed. It wouldn't necessarily have been his choice. So my impression was that he... Well, he'd had retained counsel through the guilty plea. Yeah, he'd had guilty. My question was, by that time, was he tapped out? Was he... There wasn't any discussion of it, and those facts are not in the record. I don't know. I want to go back also to the state's, or the government's, argument that because he drafted all these documents and he could argue them in open court, he had some understanding of what he was doing. You've got to go back and look at what he was drafting and what he was arguing to understand that that's really not true. I mean, here's a guy who's arguing that the occupational license of a lawyer is a title of nobility and that his compelled association with counsel violated his First Amendment rights. He's arguing that 28 U.S.C. 636C, which is a civil rule of procedure, deprived magistrate of authority to hear his motion unless he consented. He's arguing that the federal rule of civil procedure 8B6 meant that if he filed a document and there wasn't injections to it, that he could file a verified affidavit of default and force the government to admit things. Clearly, he doesn't understand what he's reading. What is the minimal thing, disclosure or statement, that the trial judge could have made and made this adequate? And made it okay? There's a case, it's a post-Joseph case, on the government side of Joseph. There's a post-Joseph case where the court talks about in the cases where the district judge doesn't really follow the bench book on the FRED hearing about what they should be asking, that a bare minimum, they really need to be giving him some specific guidance. And I think the examples in many of the cases that I looked at were, they need to talk about, look, your attorney can help you subpoena and call witnesses. Your attorney can help you cross-examine. Your attorney can help you prepare to present evidence, if necessary. Those sorts of things. Not just this general, you know, a defendant who uses himself and his attorney as a fool for a client. I mean, it's just too general, I think, is what the argument has been. And so I think you get to this point where you have to look at not just what the judge said, because it's so general, but what he understood. You know, what one could reasonably think he understood. Now, I want to go back again, if you'll let me, to the government's brief, and they talk about the fact that Harrod served in the Army National Guard and he had a scrap metal business. And again, I submit to you, what does that have to do with his understanding of the risk of self-representation in a federal that don't understand a whole lot about the law. And then, you know, and this is where I think the court is going to, is that he put some thought and effort into determining what his rights were. But what your rights are and what the risks of exercising those rights are, again, two different things. His motion, if you go back and look at it a little carefully, says, you know, that he's worried about the personal consequence of his conviction and the right to present his own defense. And he's not really talking about any specific or practical way about the real risks of self-representation. Of course, at this point, he'd already pled. We're talking about representation. Sentencing. Sentencing. That's all we're talking about, right? Yes. Mm-hmm. Yeah. The government goes on to argue that the judge didn't need to do any further inquiry because Herod had demonstrated sort of a keen grasp, and that's the government's language, of Federal Rule of Criminal Procedure 11D2B and the Carr Factors in terms of his motion to withdraw his guilty plea. And that's the next thing we can talk about. But again, first of all, Herod does address the Carr Factors. But if you go back and look at it, at the very end of that motion on page 20, he asserts that the Carr Factors are irrelevant as case law from a foreign jurisdiction, which doesn't apply. So again, he's demonstrating his complete lack of understanding of what it is he's getting into. But even if you assume that it does, again, the understanding of the law or the rules of criminal procedure relating to the motion to withdraw doesn't say anything about his understanding of his risks of self-representation. They're two different things. And again, same vein, the judge was aware that Herod had some familiarity with both rules of criminal procedure and the case law applicable to a situation, and the government says, okay, yep, the awareness, the familiarity is enough. And I again would make this distinction that familiarity with the law and understanding of the law or understanding of what the consequences are are two different things. And just because he can read a law doesn't mean he understands it. And I would go back to you, that 28 U.S.C. 636C and the Federal Rule of Civil Procedure, he's trying to cite these in criminal cases. He doesn't get it. And again, he knew how to research and was aware of the necessity of applying the law or the facts to this case. No, not really, because if you know how to research, you know how to find relevant case law, and he really didn't. I mean, apart from Ferretta and apart from Carr, which he says isn't relevant, he really didn't find anything that was helpful for him. So no, I would say that's really not true. What was out there that would have been helpful to him? I'm sorry? What was out there that would have been helpful? You know, I don't find any cases that are this general and that are really as directly on point as this, and I knew the court would probably ask me for my best case, and so I did go back looking for something else that might be helpful. There is a case, and I apologize to counsel, I don't have it cited, I don't think, in my brief. I can provide it later if anybody wants, but it's United States v. Jones, 421F3, 359. It's a 2005 case before Davis, Jones, and Garza. And there, again, the court is talking about the fact that where the trial court's warnings are less than what's suggested by the bench book, they generally contained practical advice about, you know, what's going to happen in this case. And as I was going generally through all of the cases that were affirmed by the court, where the grant of the motion to proceed pro se was granted and then affirmed on appeal, that that's actually true. The vast majority of them, there's at least some discussion of, you know, you're going to need him to show you how to file a subpoena, or you're going to need him to show you how to cross-examine a witness in order to prepare your case. And we just don't have any of that here. Doesn't it make a difference that all we're talking about here is, all that was left was a mitigation statement to the court, wasn't it, in sentencing? Yeah, that's true. I mean, did he make a statement to the judge in mitigation? At the sentencing hearing? Yes. Well, he filed pro se objections to the PSR. He didn't make necessarily a mitigation argument, but he was arguing that, you know, generally that the PSR miscalculated, he shouldn't have had firearms tacked on to his senses, that sort of thing. So he did attempt to do that during the sentencing hearing. His counsel had filed objections to the PSR. Counsel had filed objections to the first PSR. It was amended, and then there were pro se objections filed. Yeah. Okay? And the court, or excuse me, the government cites this Joseph case in their brief, and they say that what the judge said to Mr. in this case was better than what was approved in Joseph. But I want to go back and look at what was said in Joseph and what was said here. In Joseph, the court said, you know, it's my strong recommendation that you allow your attorney to do the questioning, and you allow him to do the cross-examination, and you allow him to put on evidence, if there's any evidence to be put on your behalf at trial. So here, again, is an example of specific things that the counsel could help him with. And in Herod, the judge didn't do that. He just said, you know, he just assumed. He assumed he knew what he was doing. If you've done this much research, you know. He didn't ask him. He told him. And then he said, oh, there could be problems with self-representation. Very generic, not specific. And he says, oh, legal obstacles, legal verticals you may encounter that may be detrimental in your case. Again, very generic. Not, he can help you question a witness. He can put your case together. He can help you put on evidence. So it is a different, it is not as more poignant. What evidence was there left to put on as between, after the, as between, what was the difference between the first PSR and the amended PSR that would lend itself to evidence and subpoenas and witnesses? I must confess I wasn't anticipating that question. I can't, off the top of my head, I can't answer it. If you'd like me to go back and look at it. If you'd like an answer, I mean, you say the judge should have told him about this. Well, at this point in the proceedings, what was the relevance of that, if any? Well, if, for example, if he'd been able to put on better evidence of, you know, the, the ruling about the firearms add-on, you know, maybe they could have gotten that reduced or pulled off. That was part of what made his sentence so very long. I mean, better argument by the, by counsel, better, better research and better argument by counsel as to the applicability of the sentencing guidelines and the add-ons to the sentencing guidelines, I think generally is what he could have helped with during the sentencing hearing. You got a very favorable sentence considering the range, didn't you? Well, considering the range, yes, but I think the point is not was it favorable within the range, but was that the range was so much higher than his trial attorney had apparently suggested to him that it might be. And granted, he did hear in the plea hearing. I'm not going to try and gloss over the fact that, you know, they told him it could be different. You know, that is what it is, and the record is what it is. But let's talk about the other issue, which is, you know, he ended up proceeding because they granted the motion to proceed pro se. The other problem is they did the hearing on withdrawing the guilty plea without counsel, and he's entitled to counsel in that kind of a hearing. If he had counsel, he might have been able to do a better job of demonstrating the car factors. As it was, he refused to even participate given his misunderstanding of 636D, and so I think that makes a difference. And my time, you see, is up, so I will save the rest for a moment. Thank you. All right. Thank you. Mr. Jackson? May it please the Court? Two things that this Court has said on previous occasions. The government suggests ought to guide this Court's decision in this case. The first is that, and this gets repeated a lot, there is no sacrosanct litany as to what ought to happen in the discourse between the district court and the defendant to determine that the defendant has knowingly and intelligently waived his right to counsel. And this Court has recognized that the circumstances of each case are different, and that depending on those circumstances determines how the district court exercises its discretion in having that colloquy with the defendant should be allowed to proceed per se. And the government suggests in this case, everything that the Court knew and that this Court now knows indicated that the Court sufficiently went through with the defendant what he needed to. No, but the defendant said, I want an investigator, and the Court explained to me what entitled that. But then he said, well, I'm looking for new counsel. Now, why wasn't that a big old red flag? Obviously, this is my theory. But my theory is that notifying the Court that he was looking for new counsel was immediately preceded by, I'd like to represent myself for now, but I'm looking for new counsel. And I also think, Your Honor, you have to consider that at that point, the defendant had had a federal defender's office representing him for a while. He then had retained counsel. So he had, and not to mention all the criminal history that Judge Davis mentioned, he had had opportunities to consult with counsel so that when he says, I'm looking for counsel, I don't think that meant a whole lot. Well, it meant I'm looking for counsel. It could have meant I was looking for counsel. I'm concerned the judge could have offered, would you like a continuance? Continue until you've got additional counsel. Well, the If the Court had decided to appoint counsel, they would have had to continue the hearing. And the Court did offer to appoint new counsel. I think you're correct. It would have been probably a smart thing to do to offer, to see if he wanted to retain counsel and offer to delay it. But I don't think that goes directly to this Court's decision of whether the consideration of allowing him to proceed pro se is appropriate. Mr. Muckerman talked a lot about how clear it was that Mr. Herod didn't really understand the law. But that's not really the focus. The focus is not whether he understands the law because all of the case law acknowledges the defendant is not likely to do as good a job by himself as with a lawyer. So the real focus is, does the defendant understand that he doesn't understand the law as well as counsel? And we suggest that given everything the District Court and this Court knows, the consideration of the Feretta factors was sufficient. I do think it's significant, as Judge Davis has noted a couple of times, this didn't occur early in the process. This occurred after a number of hearings, including the plea hearing, where the only thing remaining was sentencing, so that Mr. Herod had had significant exposure to the federal courts before he asked to go pro se. And, frankly, the courts had had a significant opportunity to observe Mr. Herod before Judge Bush decided to permit him to proceed pro se. He said the only thing was sentencing. When was the motion to withdraw the guilty plea filed? The motion to withdraw? The guilty plea. When was it filed? That was the same thing as the omnibus motion, which is the one where he asked to proceed pro se. That was filed on 27 March of 2013, which was the, to put that in context, the plea hearing was on 21 June of 2012. So approximately nine months later, this motion that asked to proceed pro se and withdraw guilty plea was filed. That was about right at three months after the first disclosure of the guilty plea in December of 2012. The sentencing occurred the same day or the day after? I forgot. No, the hearing on the omnibus motion where he was allowed to proceed pro se occurred 11 April of 2013. Sentencing was not until 14 June, approximately two months later. My point was he had filed the motion to withdraw his guilty plea before the hearing on when he was allowed to proceed pro se. But both of those requests were in the same motion. So it wasn't just the sentencing that was left. The court knew he would be proceeding without a lawyer on the motion to withdraw his guilty plea. Yes, ma'am. That's actually correct. The same hearing where he was allowed to proceed pro se is where they considered the motion to withdraw guilty plea. Now, there's an additional factor there in that Mr. Harrod objected to the magistrate judge hearing the motion to withdraw guilty plea and so refused to participate in that part of the motion. They went through the hearing with respect to proceeding pro se. Judge Bush just told them to let him proceed pro se, and then Mr. Harrod objected in further proceeding in front of Judge Bush on the motion to withdraw guilty plea. We didn't present any evidence or anything with respect to that. My only point is when you say the only thing left with sentencing is not correct, there was also the motion to withdraw guilty plea that was left to be determined without counsel. Well, that is correct. That was part of the same hearing, that determination. But by the time that Judge Buzan got to consideration of the motion to withdraw guilty plea, Mr. Harrod no longer had counsel. That's correct. Did he have counsel at the beginning of that hearing? Yes. So counsel was there, showed up. Retained counsel showed up and was excused at the early stage of that hearing. And he had already filed a motion to withdraw, apparently based on Mr. Harrod's request to proceed pro se. But, yes, retained counsel was there for the beginning of the hearing. And I don't know whether he actually left the courtroom or not. I don't think it's clear whether he stayed by. But it is clear he didn't continue to serve in any capacity during that hearing or at sentence. The government, is there any obvious reason to put on evidence at the motion to withdraw the plea at that hearing? Well, yes, sir, because the defendant has the burden of proving the car factors. So if the defendant fails to put on any evidence with respect to those, then it's sort of a default win for the government. And Mr. Harrod chose not to do that. Other than he made a couple arguments, I think, in support of it. But he didn't really put on evidence because he didn't think he had to go in front of the magistrate judge with respect to that. But I think that points up the distinction that I think this court needs to make, and that is the defendant didn't know what he was doing in terms of trying to put on a hearing on a motion to withdraw. But the defendant didn't know, because of what Judge Bush had told him, that he's not going to know how to do it as well as a lawyer. And that's really, if there is a constitutional right to proceed pro se, then we have to acknowledge that that includes letting those proceed pro se who don't understand the law, but they do understand they're not a lawyer and they do not understand the law, but they still want to do it. And, in fact, the history of this case, post-motion to withdraw guilty plea, shows that Mr. Harrod had a whole bunch of things that he wanted the court to consider that he wasn't really the lawyer, frankly, to file. He filed a number of pleadings that a lawyer wouldn't want to file for. And the only way he gets those filed is to insist on going pro se. I think it's important to remember that at the stage of this decision to proceed pro se, he'd been through an initial appearance where he'd been advised of all of his rights, including the nature of the charges and the penalty, and where the court had determined he was competent to proceed. He'd been in front of Judge Bush, the same judge that allowed him to proceed pro se, for the plea hearing. And if you walk through that plea hearing transcript, everything happened that is supposed to happen. Judge Bush determined that he was competent to proceed with it. He got all of the advice he should have gotten about his constitutional and trial rights. They had the discussion about counsel, that he was satisfied with counsel. The plea agreement that he had signed said he had discussed everything, including possible offenses with counsel, and was satisfied. They went over the elements of the plea. They went over the factual basis. They went over the penalties, which, of course, would have been by then at least the second time that somebody had gone over the penalties with him. Judge Bush even talked with him about the collateral consequences of a felony conviction, losing the right to vote, losing the right to fire firearms, and so forth. He discussed the guidelines with him. Confirmed that Mr. Herrod had read the plea agreement and understood it. Confirmed there hadn't been any threats, forces, or promises, all the sorts of things this court looks to, you know, for right of hearing. Reviewed the waiver of appeal. So we had all of that colloquy between Judge Bush and Mr. Herrod at the time that he decided to let him go pro se. Judge Bush also had available to him the PSR at that point, and the PSR would have advised him on the age and education of the defendant, his employment, including the fact that he was apparently confident to have been self-employed for a number of years, his Air National Guard experience, his financial history, which would have advised the magistrate that he was apparently capable enough to have owned a home and several vehicles. Judge Bush would have known from the PSR about his criminal history, which, as I believe Judge Keene noted, was extensive, and would have known about his physical and mental condition. So we have all of that at the time we get to the omnibus hearing. And, you know, in the omnibus motion itself, Mr. Herrod acknowledges his familiarity with the cases that are important on the right to proceed pro se. I mean, he quotes it. I recognize that proceeding pro se may be to my detriment, but I've got a right to do it anyway. Illinois v. Allen. Johnson v. Zirk, he acknowledges that he knowingly and intelligently forgoes the traditional benefits associated with the right to counsel. And Judge Bush is entitled to give that something. Now, Ms. Schmeichel makes a good point that, obviously, when Mr. Herrod reads these Supreme Court cases, he probably doesn't read them like a lawyer would. But the plain language, which Mr. Herrod quotes in his motion, suggests that he at least has the basic knowledge, this is a stupid thing for me to do, so say the courts, but I'm going to do it anyway. And he specifically said in his motion, I really want to go pro se because I have arguments to make that my lawyer won't make for me. And I think this court acknowledges in its order to brief this matter that the discussion between Judge Bush and Mr. Herrod was focused. But if you break down what Judge Bush said to him, you find that Judge Bush actually made a number of points that this court has said need to be made in a Ferretta hearing. He told him right off the bat there are problems with self-representation. He told him the law is a difficult area and there can be certain legal obstacles, legal hurdles that you may encounter. He told him those obstacles would be a detriment to his case. He told him it was advisable to have a lawyer. He reiterated that he had a right to counsel and offered to appoint counsel. He told him, I want to establish on the record that it's dangerous for you to proceed without counsel. He gave the Lincoln quotation that we're all familiar with. He told Mr. Herrod, I wouldn't represent myself even in a minor civil case. He told Mr. Herrod, the problem is you can get caught up with emotions and sometimes lose sight of what's real. And at that point, after all of that discussion, Mr. Herrod comes back and says, I understand all that, but I'd rather represent myself. I am in the process of looking for another attorney. If you apply what we know happened in this case to the factors that this court has said are important, this court said number one, age, military judge, I'm sorry. MJ sometimes stands for that for me. The magistrate judge knew how old Mr. Herrod was. Second fact was education. All of that was before the magistrate judge. Third fact, a background experience in conduct. The magistrate judge knew. As we talked about, Mr. Herrod had been in the National Guard, been self-employed, owned a home, owned vehicles, was married, had five children, knew that he had extensive criminal history and significant experience with the criminal justice system. Next factor, waiver wasn't the result of coercion or mistreatment. They'd been through that with respect to the plea agreement. And the magistrate judge Bush knew he'd been represented by competent and retained counsel and that there was no reason to think that this decision at this point was the result of coercion or mistreatment. He understood the nature of charges. Next factor, he'd been through that at initial appearance and arraignment. He'd been through that at the plea. The consequence of the proceedings. Judge Bush knew that Mr. Herrod had extensive experience with the criminal justice system and had filed on his own a number of motions, including this omnibus motion. And then finally, the final factor, the practicality of waiving the right to counsel. And the government suggests that the discussion I just talked about satisfies what this court has said needs to happen for right of hearing. If you then, and I won't try to do it factor for factor, but this court has noticed, and you know, maybe in a perfect world, the thing to do is say judges, there's an outline in the judge's bench book, pull that sucker out and go through it, and then we won't have issues like this. But so far this court has said we're not going to require a particular script. But even if you did that, if you pull out the bench book and you start looking at the factors that the bench book covers, nearly every one of those was covered in this case. Had Mr. Herrod studied law, the magistrate judge knew that he had. Had he represented himself in a criminal case, the magistrate judge knew that he had. Did he understand the crimes charged with? Been over that twice, initial appearance and plea. Same thing with the penalty. Same thing with the advisory guidelines. What was left there? The two major factors that were not included, I think, number one was their familiarity with the federal rules of evidence. That wasn't covered, but the government suggested it really didn't matter because the rules of evidence don't really apply at sentencing, which was essentially all that was left. The other thing was whether he had a familiarity with the federal rules of criminal proceedings, and that specific question wasn't asked. I think you can infer that Judge Bush had pretty good grasp on how much Mr. Herrod did and didn't know. He obviously had rudimentary knowledge because he cites them in his various motions, but let's face it, he didn't know them. He wasn't asked whether he knew them, but again, at the stage that this case was at, which was just pre-sentencing, that's not quite— Well, you keep saying just pre-sentencing, but there was also the motion to withdraw the guilty plea pending. That's true, yes, ma'am. But even with respect to hearing on a motion, whether he knew the federal rules of criminal procedure is not the same significant issue that it would be pre-trial. It really matters if you know the rules if you're going into a trial. Whether you know them going into a motion hearing or a sentencing is not the same question, and this court has noted and quoted, I believe, a Third Circuit case, that the stage of the proceeding when the defendant asks to go pro se is significant. And it's significant in this case, which is why in this case, even if this court found that the threat of hearing might not have been all you would hope for in another case where it occurred early in the game, given where it occurred in this case, it was sufficient in accordance with this court's prior case law, and the case ought to be affirmed. Just one housekeeping matter. You're not relying on the waiver, the appeal waiver at all? No, no, ma'am. I don't think it covers it, but even if it did, no, we're too late in getting to a file on it. Okay, thank you, sir. Okay, Mr. Schmucker, back to you. Judge Owen, I think you're right, for sure, that the fact that he mentions that he's looking for new counsel should have raised a red flag. I think the other thing that should have raised a red flag was when he sought standby counsel, and this was denied. I would point out that the Joseph case, again, this is the case that the government relies pretty heavily upon, is one in which part of the reason that it was deemed okay there was because he did have standby counsel throughout proceedings, and towards the end, he actually had his standby counsel reappointed and represented through the end of his proceedings. That didn't happen here. Obviously, he didn't get standby counsel at all. Again, I think, Judge Owen, you're correct. It's not the only thing left. It wasn't just the sentencing. It was also the hearing on the motion to withdraw at which Mr. Herod needed to put on evidence in support of the car factors, and, again, his misunderstanding of the rules meant that he did not participate at all in any significant way in that part of the proceeding. I think the judge, to be wise and to be cautious and really to have satisfied Freda, might at least have said to him, look, if you keep your counsel, or at least through this motion to withdraw your plea hearing, he can help you put on the evidence that you need to put on the car factor. He can make you understand why you need to allow me to do it here in the magistrate's court instead of in front of the district judge, and also he can help you put on the evidence for that. But that obviously did not happen, and so Mr. Herod basically went through that motion to withdraw his plea hearing without the assistance of counsel. If that becomes a problem, I think what you have to do then is to say, and if you should have had counsel there, then you not only send it back because of the sentencing issue, but you send it back and tell the judge, you know, you can't have granted this or denied this motion to withdraw your guilty plea. Excuse me, I misspoke there for a second. And just have that vacated so you need to do a full hearing with his counsel present, or have the Freda hearing fully and make sure that he understands what he's doing. I don't have anything further. I would just ask that the order denying or granting the motion to proceed verse A be reversed and that the case be sent back also on the motion to withdraw the guilty plea. Anything else? Thank you, Ms. Shufflin. You're court appointed, and the court appreciates very much your services. Thank you, Your Honor.